UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KELLY TURNER on behalf of BDT, a
minor,

                    Plaintiff,

-vs-                                                    Case No.  6:10-cv-1497-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

# ORDER

Kelly Turner ("Ms. Turner"), on behalf of B.D.T., a minor child (the "Claimant") appeals

to the District Court from a final decision of the Commissioner of Social Security (the

"Commissioner") denying Claimant's application for benefits. *See* Doc. No. 1.  Claimant was

born on July 4, 2000, and was nine years old at the time of the Administrative Law Judge's (the

"ALJ") decision.  R. 9, 111. Ms. Turner maintains that Claimant is disabled due to attention

deficit hyperactivity disorder ("ADHD"), asthma, and vision problems.  R. 91, 97.[1]

Claimant argues that the final decision of the Commissioner should be reversed for

further proceedings because: 1) the ALJ's finding at step-three of the sequential evaluation

process that Claimant's impairments do not meet or equal Listing 112.11 for ADHD is not

supported by substantial evidence; 2) substantial evidence supports a finding that Claimant meets

Listing 112.11; 3) the ALJ's failure to discuss the evidence at step-three of the sequential

---

[1] On appeal, Claimant does not raise any issues related to Claimant's physical impairments.  Doc. No. 16.

evaluation process warrants reversal because the Court is without a sufficient basis to determine that the proper legal principles have been followed (citing *Ellington v. Astrue*, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008) and *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); 4) at step-four the ALJ erred by failing to explain how he gave "great weight" to the opinion of two non-examining physicians, Drs. Prather and Weber, but did not ultimately adopt their opinion that Claimant has marked limitations in the domain of attending and completing tasks; 5) at step-four substantial evidence supports a finding that Claimant is at least markedly limited in the domains of acquiring and using information; interacting and relating with others; and caring for himself; and 6) the Appeals Council erred by not remanding the case to the ALJ based upon the new evidence submitted to it because there is a "strong possibility" that those "opinions would change the administrative outcome." Doc. No. 16 at 12-24. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.     **BACKGROUND.**

The Claimant is school-age child, who was seven years old on the date the application for benefits was filed and was nine years old on the date of the ALJ's decision and about to enter the third grade. R. 30, 111, 174, 359-360. Claimant repeated kindergarten and records from Pediatrics of Brevard show that Claimant has displayed behavioral issues in school as early as five years of age. R. 266, 359. In October of 2007, Claimant was diagnosed with ADHD. R. 286. The record shows that during the relevant time period, Claimant moved from Florida to Kentucky and back again during kindergarten and the first grade. R. 285, 359. No treating, examining, or non-examining physician has opined that Claimant meets, equals, or functionally

equals any listing.  R. 285-91, 292-97, 298-302, 329-34.  Thus, the record contains no medical opinion that Claimant is disabled.

On November 9, 2007, Dr. Robin S. Engel, a psychologist, completed a psychological assessment of Claimant due to Claimant's "difficulties with overall academic performance and inattention concerns in the classroom."  R. 285.  Dr. Engel observed Claimant in the classroom setting and noted that Claimant: did not appear to be listening; interrupted other students; yelled out comments to other students; totally ignored directions from his teacher; did not follow classroom rules; was in continuous motion; and "appeared to say and do whatever came to his mind whenever it came to his mind."  R. 286.  Dr. Engel performed a series of functioning tests on Claimant.  R. 286-90.  Claimant scored within the average range on the Reynolds Intellectual Assessment Scales and the Odd-Item Out test, which measure cognitive functioning.  R. 286.  On the Guess-What test, Claimant scored in the high average range of intellectual functioning.  R. 286.  On the Behavior Assessment System for Children-Second Edition, which identifies emotional and behavioral symptoms, Claimant scored in the clinically significant range.  R. 287. Dr. Engel stated that this indicated Claimant may warrant more formal treatment.  R. 287.

Dr. Engel's summary and recommendations were as follows:

> [Claimant] is a seven-year old student . . . who has received special education services in the past at various locations.  The current assessment reveals an estimated cognitive ability within the average range with a standard score of 104.  He exhibits strength in verbal skills, estimated in the high average range.  Behavior rating scales . . . reveal several areas of concern.  Adaptive skills appear to be in the at-risk to average range at home and at school. . . .
>
> In conclusion, it appears [Claimant] does exhibit weaknesses in the areas of behavior or social emotional skills as well as academically.  His current diagnosis of ADHD could be impacting his performance and day to day functioning in the classroom.  It is

> recommended that the information presented in this report be used in combinations with information provided by other school personnel and parents for the determination of the most appropriate educational program for [Claimant]. . . .
>
> [Claimant] appears to do well verbally and is easily engaged in verbal tasks.  He may benefit from having the opportunity to exhibit his knowledge verbally or orally rather than writing them or completing projects.  In addition, [Claimant's] social-emotional functioning may benefit from having structured opportunities to practice social skills. . . . [Claimant's] hyperactive behavior in the classroom needs to be addressed through various intervention strategies.  A behavior chart may be helpful as well as a picture schedule.  He may need opportunities throughout the day to stretch and gain the movement his body craves.  For example, if you see that he is having difficulty sitting still, you may need to stop and have a stretch break or send [Claimant] to another room or office carrying something slightly heavy.

R. 290-91.  Thus, Dr. Engel opined that, while Claimant has average cognitive functioning, his ADHD causes behavioral/social-emotional issues, which may require certain academic accommodations.  R. 290-91.

Claimant's first grade teacher, Ms. Pruett, completed an undated Teacher's Questionnaire.  R. 166-73.[2]  The Teacher's Questionnaire provides that Claimant is largely in a self-contained special education classroom with a student teacher ratio of 11 to 3.  R. 166.  Although Claimant is in the first grade, Claimant's reading and written language levels were said to be between kindergarten and first grade. R. 166.  Claimant's math levels were on a first grade level.  R. 166.  The Teacher's Questionnaire asked Ms. Pruett to rate Claimant's functioning within five domains, including: acquiring and using information; attending and completing tasks;

---

[2] The Teacher's Questionnaire is also unsigned, but it clearly states that it was completed by Claimant's first grade teacher at Sea Park Elementary School.  R. 166.  Claimant's first grade teacher at Sea Park Elementary School was Ms. Pruett.  R. 183.  Accordingly, the Court concludes that the Teacher's Questionnaire was completed by Ms. Pruett.

interacting and relating with others; moving about and manipulating objects; and caring for himself. R. 167-171.

In the domain of acquiring and using information, Ms. Pruett opined that Claimant has obvious problems, serious problems, or very serious problems throughout all ten separate areas of functioning within the domain. R. 167.[3]  Ms. Pruett stated:

> [Claimant] is in a self-contained VE classroom [with a] ratio of 11 students to 3 teachers on a daily basis.  He goes into the regular [education] classroom for [ninety] minutes in the morning . . . and then the rest of the day in the [special education] classroom.

R. 167.  Regarding the domain of attending and completing tasks, Ms. Pruett opined that Claimant has serious problems or a very serious problem in all thirteen separate areas of functioning within the domain.  R. 168.[4]  As to the domain of interacting and relating with others, Ms. Pruett opined that Claimant has slight, obvious, serious, or very serious problems throughout thirteen separate areas of functioning within the domain.[5]  Ms. Pruett stated that

---

[3] The areas of functioning within the domain of acquiring and using information include: comprehending oral instructions (very serious problem); understanding school and content vocabulary (serious problem); reading and comprehending written material (serious problem); comprehending and doing math problems (obvious problem); understanding and participating in class discussions (obvious problem); providing organized oral explanations and adequate descriptions (serious problem); expressing ideas in written form (serious problem); learning new material (serious problem); recalling and applying previously learned material (obvious problem); and applying problem solving skills in class discussions (serious problem). R. 167.

[4] The areas of functioning within the domain of attending and completing tasks include: paying attention when spoken to directly (very serious problem); sustaining attention during play/sports activities (serious problem); focusing long enough to finish assigned activity or task (very serious problem); refocusing to task when necessary (very serious problem); carrying out single-step instructions (very serious problem); carrying out multi-step instructions (very serious problem); waiting to take turns (serious problem); changing from one activity to another without being disruptive (very serious problem); organizing own things or school materials (very serious problem); completing class/homework assignments (very serious problem); completing work accurately without careless mistakes (very serious problem); working without distracting self or others (very serious problem); and working at reasonable pace/finishing one time (very serious problem).  R. 168.

[5] The areas of functioning within the domain of interacting and relating with others include: playing cooperatively with other children (serious problem); making and keeping friends (serious problem); seeking attention appropriately (very serious problem); expressing anger appropriately (not reported); asking permission appropriately (very serious problem); following rules (very serious problem); respecting/obeying adults in authority (very serious

Claimant was changed from a full-time regular class to a self-contained special education class where a behavioral plan is used.  R. 169.  Ms. Pruett opined that Claimant has no problems in the domain of moving about and manipulating objects.  R. 170.  In the domain of caring for himself, Ms. Pruett opined that Claimant has serious or very serious problems in six of the ten separate areas of functioning within the domain.  R. 171.[6]  Ms. Pruett also opined that "with medication we see an ability to focus to tasks, complete work, [and] get along better with others.  He still has difficulties, but it is lessened."  R. 172.[7]  Thus, although Claimant displayed serious or very serious problems within numerous areas amongst most domains, Ms. Pruett noted that Claimant's difficulties were reduced by medication.  R. 172.

On May 15, 2008, an Individual Education Plan (the "IEP") was adopted for Claimant at Sea Park Elementary.  R. 275-84.  In the area of reading, Claimant scored below average on the Woodcock Johnson test.  R. 277.   The IEP stated that although Claimant is able to "accurately read many words through mid 1st grade level," he "is often unable to focus and therefore unable to work at grade level on many reading activities."  R. 277.  The IEP set an annual goal for Claimant of correctly reading and understanding a passage with 80% accuracy.  R. 277.   In   the area of mathematics, Claimant scored in the average range on the Woodcock Johnson III test.  R.

---

problem); relating experiences and telling stories (serious problem); using language appropriate to the situation and listener (slight problem); introducing and maintaining relevant and appropriate topics of conversation (serious problem); taking turns in a conversation (very serious problem); interpreting meaning of facial expression, body language, hints, and sarcasm (serious problem); and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation (slight problem).  R. 169.

[6] The areas of functioning in the domain of caring for himself include: handling frustration appropriately (very serious problem); being patient when necessary (very serious problem); taking care of personal hygiene (no problem); caring for physical needs (no problem); cooperating in, or being responsible for, taking needed medications (no problem); using good judgment regarding personal safety and dangerous circumstances (obvious problem); identifying and appropriately asserting emotional needs (very serious problem); responding appropriately to changes in own mood (very serious problem); using appropriate coping skills to meet daily demands of school environment (very serious problem); and knowing when to ask for help (serious problem).  R. 171.

[7]On or about April 2, 2008, Claimant was prescribed Adderal to treat his ADHD by Pediatrics of Brevard.  R. 268.

279.  The IEP noted that Claimant is capable of performing single-digit addition and subtraction problems, but he "has more difficulty with word problems that do not provide a visual clue."  R. 279.  The IEP set an annual goal for Claimant of correctly solving math problems involving addition and subtraction with 80% accuracy.  R. 279.

In the area of writing, Claimant scored in the low average to below average range on the Woodcock Johnson III test.  R. 280.  The IEP noted that Claimant can "easily complete sentences that are begun for him," but he "has difficulty generating writing on his own."  R. 280.  The IEP set an annual goal for Claimant of writing two or more sentences with 80% accuracy.  R. 280.  In the area of social/emotional behavior, the IEP noted that Claimant had difficulty staying on task, talking out often, touching other peoples' things, participating in activities, and staying in his seat.  R. 281.  The IEP set an annual goal for Claimant of using appropriate behaviors for learning and interacting with others 80% of the time.  R. 281.  As part of the IEP, claimant was provided with the following accommodations in the classroom: extended test time; breaks during tests; verbatim reading of the entire test; extra response and processing time; and extra time to complete class assignments.  R. 283.

On June 13, 2008, Drs. Ira Pinnelas and Bruce Hertz offered a non-examining opinion based upon a records review.  R. 292-97.  Drs. Pinnelas and Hertz opined that Claimant's ADHD is a severe impairment, but it does not meet, medically equal, or functionally equal any listing.  R. 292.  Drs. Pinnelas and Hertz opined that Claimant's impairments cause less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. R. 294.   In the domains of moving about and manipulating objects, and caring for oneself, Drs. Pinnelas and Hertz opined that Claimant's

impairments cause no limitations.  R. 295.  Drs. Pinnelas and Hertz note that Claimant is in a self contained classroom and with medication he has demonstrated "an ability to focus on tasks, complete work, and get along better with others."  R. 297.  Nevertheless, the doctors note that he still has difficulties in those areas.  R. 297.

On September 15, 2008, Claimant presented to Dr. Barbara M. Paulillo, a psychologist, for a consultative mental evaluation.  R. 298-301.  Claimant was eight years old at the time of the evaluation, and attending second grade.  R. 298.  Claimant was dressed appropriately and displayed adequate hygiene.  R. 298.  Claimant was extremely cooperative during the evaluation and a good rapport was developed.  R. 298.  Claimant left his seat constantly and demonstrated difficulty sitting still.  R. 298.  Dr. Paulillo reported that Claimant's overall pace was normal, but he "was not capable of focusing and concentrating during our interaction, and was frequently redirected."  R. 298.  Claimant stated that he had only one "true friend," who lived in Tennessee. R. 299.

Regarding Claimant's mental status, Dr. Paulillo stated that his behavior was friendly and cooperative, although he could be easily distracted.   R. 300.  Claimant would often interrupt when his mother was speaking with Dr. Paulillo.  R. 300.  Claimant's concentration was limited and it took him three times to correctly spell his name backwards.  R. 300.  Dr. Paulillo noted no deficits in immediate memory, and his intelligence and fund of information appeared to be average.  R. 300.  Dr. Paulillo also reported that Claimant's judgment and insight were within normal limits.  R. 300.  Dr. Paulillo assigned a Global Assessment of Functioning Score of 75 and opined that Claimant's "prognosis is good, as his symptoms of [ADHD] have been managed more effectively by medication." R. 301.

On October 1, 2008, Claimant's Adderal was increased to 20 mg by Pediatrics of Brevard. R. 340. On October 7, 2008, Claimant's second grade teacher, Claire Richter, completed a Teacher Questionnaire. R. 195-202. Ms. Richer states that Claimant is in second grade, reading on a first grade level, doing math on a second grade level, and writing on a first grade level. R. 195. Claimant is in special education classes on a full time basis with student teacher ratio of 6 to 1. R. 195. The Teacher's Questionnaire, like the one completed by Ms. Pruett above, asked Ms. Richter to rate Claimant's functioning within five domains, including: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and caring for himself. R. 196-202.

In the domain of acquiring and using information, Ms. Richter opined that Claimant only had an obvious problem in two of the ten areas. R. 196.[8] In the remaining eight areas, Claimant either displayed no problem or a slight problem. R. 196. Ms. Richter stated:

> [Claimant] leans math skills quickly. He enjoys science and does not have significant difficulty with social studies concepts. He has difficulty with decoding written material. His comprehension of material read to him is adequate to good depending on his interest level.

R. 196. Thus, Ms. Richter found no "serious" or "very serious problems" in any area of the domain of acquiring or using information. R. 196.

In the domain of attending and completing tasks, Ms. Richter opined that Claimant has serious or very serious problems in seven of the thirteen areas. R. 197.[9] In the remaining six areas, Claimant displayed obvious, slight, or no problems. R. 197. Ms. Richter stated:

---

[8] Those areas were reading and comprehending written material, and expressing ideas in written form. R. 196.

[9] Those areas include: focusing long enough to finish assignments (serious); refocusing to task when necessary (serious); carrying out single-step instructions (serious); carrying out multi-step instructions (very serious);

> [Claimant] receives a great deal of additional help where reading is
> required.  His comprehension is good but spelling in his written
> assignments and decoding are very difficult for him.  He is capable
> of doing math independently and sometimes does.  Sometimes he
> will do anything but the assignment given until he realizes he will
> lose something he wants like computer time.

R. 197.    In the domain of interacting and relating to others, Ms. Richter opined that Claimant

has no "very serious problems" in any of the thirteen areas, and a "serious problem" only in the

area of making and keeping friends.  R. 198.  Ms. Richter stated:

> On occasion [Claimant] has been given a 'gift of time' (like time
> out but the student decides when to leave).  He needed more
> frequently at the beginning of the year.  [Claimant] has a great deal
> of difficulty making friends and sometimes tries to do favors to get
> children to like him.  He can be 'bossy.'  When he doesn't want to
> do something, he digs in and quietly won't.  He will not back down
> when he is angry. . . .  [Claimant] is easily frustrated in some
> activities, especially those involving reading.  He can be impatient
> if he doesn't get help as quickly as he would like.

R. 198, 200.  Ms. Richter opined that Claimant had no problems in the domain of moving about

and manipulating objects.  R. 199. In the domain of caring for himself, Ms. Richter opined that

Claimant had no "serious" or "very serious problems" in any of the ten areas.  R. 200.

On October 13, 2008, Drs. William Prather and Theodore Weber offered a non-

examining medical opinion based upon a records review.  R. 329-334.  Drs. Prather and Weber

opined that Claimant's ADHD is a severe impairment, but it does not meet, medically equal, or

functionally equal any listing.  R. 329.   Drs. Prather and Weber opined that Claimant's

impairments cause less than marked limitations in the domains of acquiring and using

information, interacting and relating with others, moving about and manipulating objects, and

caring for himself.  R. 331-32.  In the domain of attending and completing tasks, Drs. Prather and

---

completing class assignments (serious); working without distracting self or others (very serious); and working at
reasonable pace (very serious).  R. 197.

Weber opined that Claimant's impairments result in marked limitations. R. 331. Drs. Prather and Weber based their opinion on Ms. Richter's Teacher's Questionnaire, Claimant's scores on the Woodcock Johnson testing, Dr. Paulillo's consultative examination and findings, and Claimant's medication history. R. 334. Drs. Prather and Weber state that Claimant:

> is of average ability with lesser developed reading and writing skills. The [C]laimant is currently in the [special education program] for ADHD. The teacher is mainly noting problems in [concentration, persistence, and pace] functioning despite treatment. There does not appear to be any discipline referrals. Overall, the [C]laimant does not appear to meet or equal a listing.

R. 334. Thus, Drs. Prather and Weber opine that Claimant's impairments do not meet or equal a listing. R. 334.

On May 7, 2009, Claimant's IEP was updated. R. 341-53. As to Claimant's annual goal of correctly reading and understanding a passage with 80% accuracy, Claimant was making satisfactory progress and was expected to master the goal during the duration of the IEP. R. 352. Regarding Claimant's annual goal of correctly solving math problems involving addition and subtraction with 80% accuracy, Claimant mastered the goal by January 20, 2009. R. 352. As to Claimant's annual goal of writing two or more sentences with 80% accuracy, by February 19, 2009, Claimant was making satisfactory progress and was expected to master the goal during the duration of the IEP. R. 353. As to the goal of using appropriate behaviors for learning and interacting with others 80% of the time, by February 19, 2009, Claimant was making satisfactory progress and was expected to master the goal during the duration of the IEP. R. 353. New annual goals were added to Claimant's IEP for the following school year. R. 344-50. On June 19, 2009, the principal of Claimant's school, Cindy Wilson, wrote a letter stating that based upon Claimant's second grade performance, "our plans are to mainstream him part of the day into an

-11-

inclusion class, which includes basic education and exceptional education students." R. 359. Thus, as Claimant entered the third grade, he was integrated into some basic education classes. R. 359-60.

On August 24, 2009, Ms. Richter completed another Teacher's Questionnaire. R. 373-80. The second questionnaire took place after the hearing before the ALJ and it was submitted for the first time to the Appeals Council. R. 373-80. In the domain of acquiring and using information, Ms. Richter opined that Claimant has a "serious problem" in the area of expressing ideas in written form. R. 374. Otherwise, she opined the Claimant displayed a slight or obvious problem in all other nine areas. R. 374. Ms. Richter stated:

> [Claimant] needs to be frequently redirected. His decoding skills are poor making his reading slow and labored. His comprehension of what he has read is good. If he is on his medication he is able to attend to his work with redirection. If he is not it is extremely difficult for him to focus even with one on one support.

R. 374. Thus, Ms. Richter opines that Claimant has poor decoding skills, but when he is properly medicated he is capable of attending to his work with redirection. R. 374.

In the domain of attending and completing tasks, Ms. Richter opined that Claimant has "serious" or "very serious" problems in six of the thirteen areas. R. 375.[10] In the other seven areas, Claimant displayed obvious or slight problems. R. 375. Ms. Richter stated:

> [Claimant] is redirected when off task. He frequently verbalizes when working (talking, humming, singing). [Claimant] is much more in control of his off task behavior and distract ability when on medication. When he is off medication it is extremely difficult for him to focus or stay in his seat or not talk. When appropriate, written directions, etc. are read to him.

---

[10] Those areas include: carrying out multi-step instructions (very serious); waiting to take turns (very serious); changing from one activity to another without being disruptive (very serious); organizing own things or school materials (very serious); and completing class assignments (serious). R. 375.

R. 375.  Thus, Ms. Richter opined that it is extremely difficult to keep Claimant on pace when he

is not taking his medication.  R. 375.

In the domain of interacting and relating with others, Ms. Richter opined that Claimant is

has no "very serious problems," and displayed "serious problems" only in the area of seeking

attention appropriately.  R. 376.  In the remaining eleven areas, Claimant displayed either slight

or obvious problems.  R. 376.  Ms. Richter stated:

> [Claimant] sometimes has time out and sometimes he needs to
> move or those around him move so they can concentrate.
> [Claimant] is very articulate.  He runs into trouble when he argues
> with and questions adult authority.  He frequently will not comply
> with directions unless he understands and agrees with them.  This
> behavior is worsened by not being on his medication.

R. 376.  Thus, Ms. Richter opined that Claimant's conflicts with adult authority worsen when he

does not take his medication.  R. 376.

In the domain of manipulating and moving objects, Ms. Richter opined that Claimant has

no "serious" or "very serious" problems in any area.  R. 377.  In the domain of caring for

himself, Ms. Richter opined that Claimant has no "serious" or "very serious" problems in any of

the ten areas. R. 378.  Ms. Richter stated:

> He has difficulty handling frustrations.   He wants questions
> answered and his issues handled immediately regardless of
> whether there is something else going on.  I think this is in part due
> to the impulsiveness; he doesn't stop to realize you are for example
> giving a student a timed exam.  Again these are worse when he is
> not on his medication.

R. 378.   Overall, Ms. Richter opined that Claimant "functions much more appropriately" when

taking his medications.  R. 379.  In summation, Ms. Richter states:

> At the beginning of the year last year, [Claimant's] behavior was
> impulsive, but he redirected well.  He found it difficult to not talk,

> hum or sing but could manage it for short periods of time.  Toward
> the end of the year, his behavior became more impulsive and it was
> extremely difficult to direct him back to task.  The first couple of
> weeks of this year were difficult as well.  His medication was
> adjusted the end of last week.  He seems to be better able to control
> his impulsivity and distract ability; however he does still need
> redirecting.

R. 380.  Thus, although Claimant's impulsivity worsened over the past year, after adjusting his

medication, Ms. Richter opined that Claimant is better able to manage his impulsivity, but still

needs redirecting.  R. 380.

**II.    ALJ's DECISION.**

On July 24, 2009, the ALJ issued a decision finding that Claimant is not disabled. R. 12-

30.  The ALJ made the following significant findings:

1.  The [C]laimant was born on July 4, 2000. Therefore, he . . . is a school-
    age child;

2.  The [C]laimant has not engaged in substantial gainful activity at any time
    relevant to this decision;

3.  The [C]laimant has the following severe impairments: [ADHD], history
    of strabismus, and estoropia;

4.  The [C]laimant does not have an impairment or combination of
    impairments that meets or medically equals one of the listed impairments;

5.  The [C]laimant does not have an impairment or combination of
    impairments that functionally equals the listings;

6.  The [C]laimant has not been disabled, as defined in the Social Security
    Act, since January 23, 2008, the date the application was filed.

R. 15-16, 30.  At step-two, the ALJ discussed: Claimant's diagnosis of ADHD, Dr. Engel's

evaluation, Ms. Pruett's questionnaire, Ms. Richter's first questionnaire, and Dr. Paulillo's

consultative examination.  R. 15-16.  At step-three, in determining that Claimant's impairments,

singly or in combination, do not meet or medically equally a listing, the ALJ did not discuss any of the evidence of record. R. 16. At step-four, in determining whether the Claimant's impairments functionally equal the listings, the ALJ thoroughly discussed: Ms. Tuner's testimony at the June 19, 2009 hearing before the ALJ (R. 31-69); Dr. Engel's report; Ms. Pruett's questionnaire; Ms. Richter's first questionnaire; Dr. Paulillo's consultative evaluation; the opinions of Drs. Pinnelas and Hertz; and the opinions of Drs. Prather and Weber. R. 16-20.[11]

As to the opinion evidence, the ALJ gave "great weight" to: the opinions of Drs. Pinnelas and Hertz that Claimant's impairments result in less than marked limitations in all domains of functioning; Dr Paulillo's opinion that Claimant's prognosis was good and his ADHD symptoms are effectively managed with medication; and Drs. Prather and Weber's opinion that Claimant did not meet or medically equal a listing. R. 20-21. The ALJ noted that Drs. Prather and Weber found that Claimant had marked limitations in the domain of attending and completing tasks, but the ALJ did not specifically state whether or not he agreed with that finding. R. 20-21.

At step-four, the ALJ made findings in terms of the following six domains of functioning: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. R. 21-30. The ALJ found that Claimant's severe impairments result in less than marked limitations in all six domains. R. 21-30. Regarding the domain of acquiring and using information, the ALJ stated that Claimant's limitations are less than marked because:

- Robin Engel, Psy. S. reported that the [C]laimant had strength in verbal skills, he had weakness in broad written language, and the [C]laimant was average in broad math skills;

- Claire Richter, the [C]laimant's teacher, reported that the

---

[11] The ALJ also discussed the treatment records regarding Claimant's eye problems. R. 19.

[C]laimant was able to decode many unknown words.  Ms. Richter reported that the [C]laimant mastered rhyming and segmenting words, hearing initial and final consonant sounds, auditory blending, naming capital and lower case letters, matching letters and words, writing words, consonant sounds and blends, the rule of the silent E, vowel diagraphs, and vowels with the letter R.  Ms. Richter indicated that the [C]laimant had not mastered diphthongs, two-syllabic words, and polysyllabic words. . . .;

- [C]laimant was reported to know his name and complete four to five word sentences;

- Dr. Paulillo reported that the [C]laimant was orientated in all spheres, his attention was adequate, he correctly repeated all three objects, his concentration was limited, he had no deficits in immediate memory, his intelligence and fund of information was average, and judgment and insight were within normal limits;

- Ms. Richter reported in [the first] teacher's questionnaire that the [C]laimant had no problem with comprehending oral instructions, understanding school and content vocabulary, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and applying problem solving skills in class discussions.  Ms. Richter indicated that the [C]laimant had a slight problem with comprehending and doing math problems, learning new material, and recalling and applying previously learned material; and the [C]laimant had an obvious problem with reading and comprehending written material and expressing ideas in written form. . . .

R. 22.  Thus, the ALJ found that Claimant has less than marked limitations in the domain of acquiring and using information based upon Dr. Engel's report, Ms. Richter's statements and questionnaire, and Dr. Paulillo's consultative evaluation.  R. 22.[12]

In the domain of attending and completing tasks, the ALJ found that Claimant's impairments cause less than marked limitations.  R. 23-25.  The ALJ relied upon the following

---

[12] The ALJ also mentioned Claimant's physical treating physician and Ms. Turner's testimony at the hearing.  R. 22-23.

evidence for his determination:

- [Claimant's] special education teacher reported that the [C]laimant was easily distracted, he did not do any of his work independently, and the [C]laimant had to be reminded repeatedly to pay attention; however, the [C]laimant did reading assignments she made one on one in another class;

- [Ms. Pruett] reported that the [C]laimant was unable to focus and therefore, unable to work at grade level on many reading activities; however, the [C]laimant was able to accurately read many words through the mid first grade level.  Ms. Pruett reported that the [C]laimant had more difficulty with word problems that did not provide a visual cue; however, the [C]laimant was able to perform single-digit addition and subtraction problems.  Ms. Pruett reported that the [C]laimant had difficulty generating writing on his own; however, he easily completed sentences started for him.   Ms. Pruett indicated that the [C]laimant was unable to stay on task for very long, he had a hard time following directions, and the [C]laimant could not get his work completed;

- Dr. Engel reported that [C]laimant appeared to do well verbally and was able to engaged easily in verbal tasks;

- Ms. Richter reported that the [C]laimant was unable to focus and work at grade level activities, and he had difficulty with multi-step problems which required him to remember or figure out what steps to perform and what order; however, the [C]laimant was able to perform double digit addition and subtraction problems. Ms. Richter reported that the [C]laimant had difficulty with correct spelling and sentence structure; however, the [C]laimant was creative in his subject matter for writing.  Ms. Richter indicated that the [C]laimant was often unable to stay on task for very long, he had a hard time following directions, and he often could not get his work completed;

- Dr. Paulillo reported that the [C]laimant had to be redirected several times during the examination;
- Ms. Richter reported in a teacher's questionnaire that the [C]laimant did not have a problem with completing work accurately; he had a slight problem with sustaining attention during play and sports, waiting to take turns, and changing

from one activity to another without being disruptive; and the [C]laimant had an obvious problem with paying attention when spoken to directly and organizing his own things or school materials. Ms. Richter indicated that the [C]laimant had a serious problem with focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, carrying out single-step instructions, and completing class work assignments; and the [C]laimant had a very serious problem with carrying out multi-step instructions, working without distracting others or self, and working at a reasonable pace; and

- Ms. Turner [testified] that [C]laimant kept himself busy on his own, worked on arts and crafts projects, and completed his chores on time; however, the [C]laimant did not finish what he started and he did not complete his homework. Ms. Turner testified that [C]laimant had problems with sitting still and keeping focused.

R. 24-25. Thus, the ALJ found that Claimant had less than marked limitations in the domain of attending and completing tasks based upon Ms. Pruett's questionnaire, Dr. Engel's report, Ms. Richter's first questionnaire, Dr. Paulillo's evaluation, and Ms. Turner's testimony. R. 24-25.

In the domain of interacting and relating to others, the ALJ found that Claimant's impairments result in less than marked limitations based upon the following:

- Ms. Pruett's report that the [C]laimant was a very fun-loving child and he enjoyed playing with others;

- Dr. Engel reported that the [C]laimant was disruptive, impulsive, uncontrollable, argumentative, defiant, threatening to others, and the [C]laimant had difficulty making and keeping friends. Dr. Engel indicated that the [C]laimant was unwilling to joint [sic] group activities at times and his behavior was adversely affecting the other children. Dr. Engel indicated that the [C]laimant's performance in areas of articulation, language, voice, and fluency were within normal limits and he had weakness in the areas of behavior and social emotional skills as well as academically;

- Ms. Richter reported that the [C]laimant was intelligent, outgoing with the other students, and he was willing to make

-18-

friends with anyone in the class;

- [Claimant] was reported to be one hundred percent understandable;

- Dr. Paulillo reported that the [C]laimant was friendly and cooperative, his impulse control was adequate, there were no difficulties with form of thought or thought content, his manner of speech was normal, and the [C]laimant's speech content was logical. Dr. Paulillo indicated that the [C]laimant had a happy mood; however, he became upset easily;

- Ms. Richter reported that the [C]laimant had no problems with relating experience and telling stories, and using adequate vocabulary and grammar to express thoughts and ideas in general everyday conversation. Ms. Richter indicated that the [C]laimant had a slight problem with playing cooperatively with other children, asking permission appropriately, following rules, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in conversation, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. Ms. Richter reported that the [C]laimant had an obvious problem with seeking attention and expressing anger appropriately, and respecting and obeying adults in authority; and the [C]laimant had a serious problem with making and keeping friends; and

- Ms. Turner reported that the [C]laimant could not deliver telephone messages; however, the [C]laimant could repeat stories he had heard, tell jokes or riddles accurately, explain why he did something, use sentences with "because," "what if," or "should have been," and did talked with family and friends. Ms. Turner reported that the [C]laimant generally got along with adults; however, the [C]laimant had no friends his age, he could not make new friends, and he did not get along with teachers. Ms. Turner testified that the [C]laimant had a hard time making and keeping friends and he had a problem getting along with his brother.

R. 26-27. Thus, the ALJ relied upon Ms Pruett's questionnaire, Dr. Engel's report, Ms. Richter's

questionnaire, Dr. Paulillo's evaluation, and Ms. Turner's testimony to determine that Claimant's

impairments cause less that marked limitations in the domain of interacting and relating with others.  R. 26-27.

In the domain of caring for himself, the ALJ found that Claimant's impairments result in less than marked limitations based on the following:

- The [C]laimant reported to be able to dress and undress with supervision and have night time bladder control;

- Ms. Richter reported that the [C]laimant had no problems with taking care of his personal hygiene, caring for his physical needs, cooperating or being responsible for taking his medication, identifying and appropriately asserting emotional needs, and knowing when to ask for help.  Ms. Richter indicated that the [C]laimant had a slight problem with using good judgment regarding personal safety and dangerous circumstances, and the [C]laimant had an obvious problem with handling frustration appropriately to changes in his own mood, and using appropriate coping skills to meet daily demands of a school environment; and

- Ms. Turner indicated that the [C]laimant could not button his clothes, tie his shoelaces, take a bath or shower without help, wash his hair, choose his clothes, and hang up his clothes; however, the [C]laimant could zipper himself, brush his teeth, comb his hair, eat by himself with a knife an [sic] fork, pick up and put away his toys, and help around the house.  Ms. Turner testified that the [C]laimant had no skills of independence such as brushing his teeth, getting dressed, and using the toilet.

R. 29.  Thus, the ALJ relied upon the Claimant's report that he was able to dress and undress himself and Ms. Richter's questionnaire to find Claimant's impairments cause less than marked limitations in the domain of caring for himself.  R. 29.  The ALJ relied heavily on Ms. Richter's questionnaire to determine that Claimant's impairments cause less than marked limitations in the domains of moving about and manipulating objections, and health and physical well-being.  R.

27-28, 29-30.[13]

Because the ALJ found that Claimant's impairments do not result in either marked limitations in two domains or an extreme limitation in one domain, the ALJ concluded that Claimant is not disabled.  R. 30.  Thereafter, the Claimant submitted new evidence to the Appeals Council, consisting primarily of a second Teacher's Questionnaire from Ms. Richter (*see* supra pp 12-14).  R. 366-81.  On August 25, 2010, the Appeals Council denied Claimant's request for review.  R. 1-8.  On October 8, 2010, Claimant appealed the Commissioner's final decision to the District Court.  Doc. No. 1.

## III.   LEGAL STANDARDS.

### A.   THE ALJ'S DISABILITY ANALYSIS.

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.   "Substantial work activity" is work activity that involves performing significant

---

[13] The Claimant does not raise any specific issue regarding the ALJ's findings as to the domains of moving about and manipulating objects and health and physical well being.  Doc. No. 16.  Thus, there is no need to provide a detailed account of the ALJ's findings.

physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step-two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 CFR § 416.924(c).

At steps three and four, the ALJ must determine whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains:  1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others;

4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 CFR § 416.926a(b)(1). A child's impairments functionally equal a listed impairment, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains. 20 CFR 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe. 20 CFR § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. 20 CFR § 416.926a(c).

20 CFR § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means: a limitation that is "more than moderate" but "less than extreme"; or the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 CFR § 416.926a(e)(2).

20 CFR § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of

his impairment(s) limit several activities.   The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 CFR § 416.926a(e)(3).   Thus, for a disability finding, a child's impairments functionally equal a listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  *Id.*

## B.      THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004),

## IV.  ANALYSIS.

### A. Step-Three.

Claimant maintains that case should be reversed and remanded for an award of benefits because at step-three of the sequential evaluation process the ALJ erred by not finding Claimant meets Listing 112.11 for ADHD and by failing to specifically discuss the evidence. Doc. No. 16 at 12-18 (citing *Ellington*, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008)).[14] Furthermore, Claimant argues that substantial evidence supports a finding that Claimant meets Listing 112.11

---

[14] Claimant does not suggest that the ALJ failed to discuss the evidence throughout his decision. Rather, Claimant argues that at step-three the ALJ failed to discuss or analyze the evidence. Doc. No. 16 at 12, 17.

for ADHD.  Doc. No. 16 at 12 ("The evidence supports a finding that the Plaintiff does indeed meet or medically equal Listing 112.11. . . .").  The Commissioner maintains that substantial evidence supports the ALJ's decision that Claimant does not meet or medically equal any listing, including 112.11.  Doc. No. 18 at 3-4.  Moreover, the Commissioner asserts that the ALJ's failure to discuss the evidence at step-three, when that evidence was thoroughly discussed at steps two and four, is not reversible error.  Doc. No. 18 at 9 (citing *Barron v. Sullivan*, 924 F.2d 227, 230 n. 3 (11th Cir. 1981)).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and <u>must provide medical reports documenting that the conditions meet the specific criteria of the Listings</u> and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (emphasis added).  "To 'equal' a Listing, <u>the medical findings</u> must be "at least equal in severity and duration to the listed findings." *Id*. (emphasis added).  To meet or medically equal Listing 112.11 for ADHD, a claimant must present "<u>medically documented findings</u>" of marked inattention, impulsiveness, <u>and</u> hyperactivity.  20 CFR pt. 404 subpt. P, app. 1, § 112.11 ("§ 112.11") (emphasis added).  *See also Stiles v. Astrue*, Case No. 5:07-cv-52-Oc-GRJ, 2008 WL 879299 at *5 (M.D. Fla. 2008) (to meet Listing 112.11 for ADHD a claimant must provide medical findings and/or medical evidence supported by clinical and laboratory findings in support of each of the listing's three criteria).[15]

---

[15] For children ages three to eighteen, a claimant must also demonstrate that the ADHD results in at least two of the following:

> Marked impairment in age-appropriate cognitive/communication function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

Including the new evidence submitted to Appeals Council, none of the medical professionals who treated or examined Claimant, or those medical professionals who reviewed the record, opined that Claimant meets or medically equals a listing.  Nor do the medical records collectively contain medical findings of marked inattention, impulsivity and hyperactivity.  R. 245-62, 263-70, 285-91, 292-97, 298-302, 329-34, 335-37, 338-40, 355-57, 366-70.[16]  While the record clearly demonstrates that Claimant has problems with inattention, impulsivity, and hyperactivity, there are no medically documented findings or opinions demonstrating that those problems meet the severity requirements of Listing 112.11.  *Id*.  Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Claimant's severe impairments do not meet or medically equal any listing.

Claimant also maintains that the ALJ erred by failing to specifically discuss the record evidence at step-three.  Doc. No. 16 at 17-18 (citing *Ellington*, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008)).  In *Ellington*, 2008 WL 1805435 at *2 (M.D. Ala. Apr. 18, 2008), the ALJ found that the claimant suffered from severe impairments of ADHD, Psychotic Disorder, and Intermittent Explosive Disorder.  *Id*.  The Court found that the ALJ erred because he failed to

---

Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

Marked difficulties in maintaining concentration, persistence, or pace.

§ 112.11B and 20 CFR pt. 404 subpt. P, app. 1, § 112.02(B)(2)(a)-(d).

[16] A diagnosis of a listed impairment is not sufficient.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

properly consider whether the claimant met or medically equaled any of applicable listings for all three of the severe mental impairments. *Id*. at *7-8. The Court noted that the ALJ made findings as to whether the claimant functionally equaled a listing, but the Court found that to be a distinct evaluation. *Id*. at 8. Thus, the Court concluded that it could not determine whether substantial evidence supported the ALJ's finding that the claimant did not meet or medically equal a listing. *Id*.

In the Eleventh Circuit, there is no requirement that the ALJ "mechanically recite the evidence" when determining whether a claimant's impairments meet any of the listings. *Hutchison v. Bown*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ could implicitly find that the claimant did not meet a listing). *See also Moore v. Astrue*, Case No. 8:07-cv-2073-T-EAJ, 2009 WL 499261 at *4 (M.D. Fla. Feb. 26, 2009) (same). In this case, the ALJ made a specific finding at step-three that Claimant's impairments do not meet or medically equal any listing. R. 16. Thus, the Court rejects Claimant's argument that the ALJ erred by not specifically discussing the evidence at step-three.

Moreover, the Court finds that the facts of this case are distinguishable from *Ellington*. "In *Ellington*, a very troubled and violent child presented with symptoms applicable to multiple listings, including ADHD (112.11), psychotic disorder (112.03), and personality disorder (112.08)." *Mixon v. Astrue*, 2011 WL 867213 at *5 (M.D. Ala. Mar. 14, 2011). The ALJ's failure to specify at step-three which listing(s) were not met, and why, prevented the Court from determining whether the ALJ's findings were supported by substantial evidence. *Id*. at *5. In this case, the only listing at issue is ADHD. At steps two and four, the ALJ provided a detailed review of the evidence. R. 15-16, 17-30. As set forth above, the ALJ's finding at step-three that

Claimant does not meet or medically equal any listing is supported by substantial evidence. Accordingly, the Court finds that the ALJ did not err by failing to discuss the evidence specifically at step-three. *See Mixon*, 2011 WL 867213 at *5 (where only listing at issue was ADHD and the ALJ's finding at step-three is supported by substantial evidence, the ALJ did not err by failing to specifically discuss the evidence at step-three). *See also Barron v. Sullivan*, 924 F.2d 227, 230 n. 3 (11th Cir. 1991) (stating that while it would be helpful to discuss specific listing at issue, there is no error where ALJ's finding that claimant does not meet or medically equal any listing is supported by substantial evidence).

While the Claimant also argues that substantial evidence supports a finding that Claimant does meet Listing 112.11, where the ALJ's findings are supported by substantial evidence, the Court may not set those findings aside, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against those findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  This is so because the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, the Court rejects the Claimant's argument that reversal is appropriate because substantial evidence in the record may also support a conclusion contrary to the ALJ's findings.

### B.  Attending and Completing Tasks.

Claimant maintains that the ALJ erred at step-four by failing to explain how he gave "great weight" to the opinion of Drs. Prather and Weber, but did not adopt their opinion that Claimant has marked limitations in the domain of attending and completing tasks.  Doc. No. 16

at 19.  Claimant also generally maintains that the ALJ's finding of less than marked limitations in the domain of attending and completing tasks is not supported by substantial evidence.  Doc. No. 16 at 18-21.  The Commissioner maintains that the ALJ gave great weight to Drs. Prather and Weber's opinion only to the extent they opined that Claimant does not meet, medically equal or functionally equal a listing.  Doc. No. 18 at 15.  The Commissioner contends that the ALJ was not required to adopt that portion of Drs. Prather and Weber's opinion that Claimant has marked limitations in the domain of attending and completing tasks.  Doc. No. 18 at 15. Moreover, the Commissioner contends that even if Claimant is markedly limited in the domain of attending and completing tasks, the ALJ's decision is still supported by substantial evidence because a claimant must be markedly limited in two domains or extremely limited in one domain.  Doc. No. 18 at 15-16.

In the decision the ALJ notes that Drs. Prather and Weber found that Claimant has marked limitations in the domain of attending and completing tasks.  R. 20.  The ALJ states that Drs. Prather and Weber "were of the opinion that the [C]laimant did not meet or medically equal a Listing.  The objective medical findings and other substantial evidence of record are consistent with Dr. Prather and Dr. Weber's opinion."  R. 21.  Thus, the ALJ gave great weight to the ultimate opinion of Drs. Prather and Weber that the Claimant does not meet, equal, or functionally equal the listings.  R. 21.

In finding that the Claimant's limitations in the domain of attending and completing tasks are less than marked, the ALJ relied on the following evidence: Claimant was  easily distracted; Claimant did no independent work; Claimant was unable to focus; Claimant was unable to do work at grade level due to lack of focus; Claimant was able to perform single-digit addition and

subtraction; Claimant appeared to do well verbally; Claimant was unable to stay on task for very long; Claimant had difficulty with multi-step problems; Claimant was able to perform double digit addition and subtraction; Claimant had difficulty with spelling and sentence structure; and Claimant had a serious problem carrying out multi-step instructions, working without distracting others or self, and working at a reasonable pace. R. 24-25. A "marked limitation" is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities. 20 CFR § 416.926a(2). The evidence cited by the ALJ shows the Claimant's impairments seriously interfere with his ability to attend and complete tasks. R. 24-25. Nevertheless, the ALJ found, without further explanation, that that evidence demonstrates that Claimant's impairments impose less than marked limitations in the domain of attending and completing tasks. R. 24-25. The ALJ's finding on this point is not supported by the evidence he relies upon. Thus, the Court finds that the ALJ's finding as to the domain of attending and completing tasks is not supported by substantial evidence.[17]

In *Muhammad v. Commissioner of Social Security*, 395 Fed.Appx. 593, 601-02 (11th Cir. 2010) (unpublished), the Eleventh Circuit stated:

> [E]ven if substantial evidence did not support the ALJ's determination that T.I.M. had less-than-marked limitations in the domain of attending and completing tasks, any such error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (holding that, although the ALJ made various errors, these errors were harmless because they ultimately were irrelevant to the denial of the claimant's application for disability benefits). Even if T.I.M.'s limitations in this domain were marked, he still would not be disabled because he did not have marked limitations in at least one additional domain. *See Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d). Although a minor claimant is disabled if he has

---

[17] The Court also notes that generally an "ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision." *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28, 2009) (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).

> extreme limitations in only one domain, the evidence described above demonstrates that T.I.M.'s limitations in the domain of attending and completing tasks were not extreme. *See Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d). Accordingly, even if the ALJ erred in evaluating T.I.M.'s limitations in this domain, substantial evidence still would support his ultimate determination that T.I.M. was not disabled.

*Id.*[18] The Court finds *Muhammad* persuasive because even though the evidence relied upon by the ALJ does not support a finding of less than marked limitations in the domain of attending and completing tasks, it does not support a finding of an extreme limitation and, as set forth below, substantial evidence supports the ALJ's findings as to the remaining domains.[19] Thus, any errors the ALJ may have made in the domain of attending and completing tasks, including his treatment of Drs. Prather and Weber's opinion as to that domain, are harmless. *Id.* at 601-602.

### C.  Other Domains.

Claimant maintains that the record contains substantial evidence supporting a finding that Claimant has marked limitations in the domains of acquiring and using information, interacting and relating with others, and caring for himself.  Doc. No. 16 at 21-23.  Thus, the Claimant argues that the evidence preponderates against the ALJ's findings as to those three domains. Doc. No. 16 at 22 ("The substantial evidence is contrary to the ALJ's findings.").  As set forth above, at step-four, the ALJ listed numerous reasons supported by the record evidence for finding that Claimant's limitations were less than marked in these three domains.  *See supra* pp. 15-21.  That evidence is such that a reasonable person would accept as adequate to support the ALJ's conclusions.  *See Foote*, 67 F.3d at 1560. Thus, as to the domains of acquiring and using information, interacting and relating with others, and caring for himself, the ALJ's findings are

---

[18] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.
[19] No medical professional opined that Claimant has any extreme limitations.

supported by substantial evidence.  The Claimant's argument that the evidence would also support a contrary finding is legally insufficient for the same reasons as set forth above (*see supra* p. 29).

### D.  New Evidence.

Claimant argues that the Appeals Council erred for failing to remand the case back to the ALJ based upon the new and material evidence Claimant submitted after the ALJ's decision. Doc. No. 16 at 23-25.  Claimants may generally present new evidence at each stage of the administrative proceedings.  20 CFR §§ 404.900(b), 416.1470(b); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If additional evidence is presented for the first time to the Appeals Council, it must consider the evidence if it is "new and material" evidence relating "to the period on or before the date of the [ALJ's] hearing decision."  20 CFR §§ 404.970(b), 416.1470(b). When claimants submit additional evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous.  *Ingram v. Comm'r*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007).

In this case, the new evidence consists largely of Ms. Richter's second Teacher's Questionnaire.  R. 366-81.  Throughout the questionnaire, Ms. Richter repeatedly states that all of Claimant's problems are lessened and more manageable when he is taking his medication. R. 374-76, 78.  Moreover, a comparison of the Ms. Richter's first questionnaire shows no significant worsening of Claimant's problems.  *Compare* R. 185-202 *with* R. 373-80. Accordingly, the Court finds that the new evidence does not render the denial of benefits erroneous.  *Ingram,* 496 F.3d at 1266.

## V.   **CONCLUSION**.

Based on the forgoing, it is **ORDERED** that final decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on March 26, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Marianne S. Hoke, Esq.
1310 West Eau Gallie Boulevard, Suite D.
Melbourne, FL 32935

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Jose G. Rolon-Rivera
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 1550 New River Ctr
200 E. Las Olas Blvd
Ft. Lauderdale, Florida 33301